IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

NELSON SCOTT,

   Plaintiff,

vs.

JOSE VASQUEZ, Warden; Dr. MARTHA
R. CHIPI; HARLEY LAPPIN, Director;
MIGUEL TERRADAS; FRANK E. ADAIR;
JOHN DOE SERA, Regional Director;
and THE UNITED STATES
OF AMERICA,

   Defendants.

CIVIL ACTION NO.: CV208-145

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Nelson Scott ("Plaintiff"), currently incarcerated at the Low Security Correctional Institution in Butner, North Carolina, filed an action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 402 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., for civil rights violations and injuries he allegedly sustained while incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). The United States of America, Martha Chipi, Frank E. Adair, and Miguel Terradas ("Movants") filed a Motion to Dismiss, or in the alternative, for Summary Judgment, and Plaintiff responded. For the reasons which follow, that Motion should be **GRANTED** in part and **DENIED** in part.

AO 72A
(Rev. 8/82)

## STATEMENT OF THE CASE

Plaintiff alleges that on March 15, 2005 he reported to "sick call" to have his right ring finger treated for an injury he sustained on March 8, 2005[1], while mopping the unit floor in Building B at FCI Jesup. (Doc. No. 1, pp. 5, 7). Plaintiff states that he was seen by Movant Terradas, a physician's assistant, who, "[w]ithout an x-ray, without any other diagnostic aids, without competent examination and without engaging in any form of differential diagnosis" stated, "'There is nothing that can be done. It's just a sprained finger.'" (Doc. No. 1, p. 7). Plaintiff asserts that he visited PA Terradas again two days later and was told to give his injury time and it would heal. (Id.). Plaintiff claims he visited PA Terradas a third time on March 25, 2005 and was given a rubber ball and told to squeeze it frequently throughout the day. (Id.). Plaintiff claims he also saw Movant Adair, a physician's assistant, on March 25, 2005, who advised Plaintiff that his tendon was gone and could no longer be fixed, and that Plaintiff would have needed surgery shortly after his injury to preserve the tendon. (Id. at p. 8).

Plaintiff claims that he approached Movant Chipi, M.D., in May of 2005 during lunch in the prison cafeteria. According to Plaintiff, Dr. Chipi told Plaintiff that if he gave his injury time, it would heal itself. (Id.). On December 11, 2006, Plaintiff states that he consulted with Dr. Kimberly Barrie, a hand specialist, who, according to Plaintiff, told him that, *inter alia*, his injury was "beyond repair" because of "the prolonged delay in diagnosis and treatment," that "under the best circumstances, plaintiff will have lost nearly all use of that finger," and that Plaintiff's finger was "dangerously infected" and "may need to be amputated." (Id.).

---

[1] Though in his Complaint, Plaintiff states his injury occurred on March, 8, 2006, in his Response to Movants' Motion he asserts he was injured "on or about March 8, 2005." (Doc. No. 28, p. 2). Medical records indicate that the actual date of Plaintiff's injury was in 2005 instead of 2006. (Doc. No. 21-2).

Plaintiff requests compensatory damages for medical expenses and loss of earning capacity, damages for pain and suffering in the amount of 1.5 million dollars, punitive damages, attorney's fees, and "further relief this Court deems just and proper." (Id. at pp. 11-12).

Movants assert the following in their Motion: 1) Plaintiff's action under the FTCA is untimely and should be dismissed; 2) Plaintiff's exclusive remedy is under the Inmate Accident Compensation Act ("IAC"), 18 U.S.C. § 4126; 3) Plaintiff's Bivens allegations fail to state claims upon which relief can be granted; 4) the individual defendants are entitled to qualified immunity; 5) Defendant Adair had no personal involvement in Plaintiff's treatment for his injury; 6) Plaintiff's malpractice claim should be dismissed because Plaintiff failed to file an affidavit of a medical expert; and 7) Movants are entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## STANDARD OF DETERMINATION

In considering a motion to dismiss filed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court must determine whether a plaintiff's "[f]actual allegations [are] enough to raise the right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In making this determination, a court must construe the complaint in a light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002). Furthermore, all facts alleged by the plaintiff must be accepted as true. Id. at 406. When evaluating a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Little v. City of North Miami, 805 F.2d 962, 965 (11th

AO 72A
(Rev. 8/82)

3

Cir. 1986). The threshold is "'exceedingly low'" for a complaint to survive a motion to dismiss. Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985) (quoting Quality Foods de Centro America, S.A. v. America Agribusiness Devel., 711 F.2d 989, 995 (11th Cir. 1983)). A complaint filed by a *pro se* plaintiff is held to even less stringent standards than a complaint drafted by a lawyer. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (citing Conley, 355 U.S. at 45-46).

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

I.  **Timeliness of Plaintiff's FTCA Action**

Movants assert that Plaintiff's action under the FTCA should be dismissed as untimely. The purpose of the FTCA is to "'provide redress for ordinary torts recognized by state law.'" Stone v. United States, 373 F.3d 1129, 1130 (11th Cir. 2004) (quoting Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir. 2001)). The FTCA is a limited waiver of sovereign immunity rendering the federal government liable to the same extent as a private party. United States v. Orleans, 425 U.S. 807, 813 (1976). However, there are certain prerequisites to bringing suit under the FTCA. First, a potential plaintiff must present the claim to the appropriate Federal agency and have that claim denied. 28 U.S.C. § 2675(a). Second, there is an "explicit limitations period for claims brought under the FTCA", which cannot be extended "beyond that which Congress authorized . . . ." Phillips v. United States, 206 F.3d 1316, 1318 (11th Cir. 2001)).

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months of the

> date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). "It is undisputed that under section 2401(b), a tort claim must be presented to the appropriate federal agency within two years after the claim accrues *and* the lawsuit must be commenced within six months after the receipt of a final agency decision." Phillips, 260 F.3d at 1317.

Plaintiff's claim accrued on March 8, 2005, the date of his injury. Plaintiff presented his claim to the Federal Bureau of Prisons ("BOP") on or about February 21, 2006—well within the two-year period. Plaintiff's notice of denial was sent via certified mail on or about July 24, 2006. Plaintiff filed a civil action based on the same injury, facts, and circumstances that are the basis for the instant claim on September 20, 2006. (CV206-203, S.D. Ga.). On January 11, 2007, that case was dismissed without prejudice because of Plaintiff's failure to pay the requisite filing fee. (Id. at Doc. No. 8). Plaintiff filed another complaint on August 8, 2007, which again was based on the same injury, facts, and circumstances as the instant claim. (CV207-95, S.D. Ga.). That claim was also dismissed without prejudice for Plaintiff's failure to pay the filing fee. (Id. at Doc. No. 8). Plaintiff filed the instant claim on October 27, 2008—outside the statutory period. A dismissal of an earlier suit that "was without prejudice does not authorize a subsequent suit brought outside of the otherwise binding period of limitations." Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982). Therefore, the dismissal of Plaintiff's two prior suits does not give him the right to file his FTCA claim beyond the statute of limitations period. If Plaintiff had paid his filing fee as directed when he filed his first suit, his FTCA claim would satisfy the statute of limitations. His failure to obey

the court's orders does not give him a free pass to extend the statute of limitations. Plaintiff's action under the FTCA is untimely and should be **DISMISSED**.

II. **Medical Expert Affidavit**

The Motion asserts that Plaintiff's claims against the medical provider defendants should be dismissed because he failed to file an expert affidavit with his complaint. (Doc. No. 21, p. 16). Because the undersigned has recommended that Plaintiff's claims under the FTCA be dismissed, there is no need to address this issue at this time. See Part I, *supra*.

III. **Remedy under the IAC**

Movants state that Plaintiff's exclusive source of recovery is under the IAC. (Doc. No. 21, p. 10). Plaintiff asserts that his injury was caused by the actions of the medical staff at FCI Jesup, and though he suffered his injury while he was working, his injury was not "proximately cause by the actual performance of [his] work assignment." (Doc. No. 28, p. 4). "Inmates who are subject to the provisions of [IAC] regulations are barred from recovery under the [FTCA]. Recovery under the [IAC] procedure was declared by the U.S. Supreme Court to be the exclusive remedy in the case of work-related injury. U.S. v. Demko, 385 U.S. 149 (1966)." 28 C.F.R. § 301.319. Because Plaintiff's FTCA claim is dismissed as being outside the statute of limitations, the undersigned need not decide whether the IAC is Plaintiff's exclusive remedy against the United States of America.

IV. **Plaintiff's claims against Frank E. Adair**

Movants assert that Frank Adair should be dismissed because he did not provide any direct care to the Plaintiff for his injured finger. (Doc. No. 21, pp. 15-16). The

AO 72A
(Rev. 8/82)

imposition of liability for a civil rights violation requires proof of a causal connection between a particular person and constitutional deprivation. Monell v. New York City Department of Social Services, 436 U.S. 658, 707 (1978). The Court of Appeals for the Eleventh Circuit has articulated pleading standards that prohibit conclusory allegations and require a Plaintiff to allege such facts as will show the existence of the asserted right cited in the Complaint and what the defendant did to violate it. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992). Thus, liability can only be imposed where there is a nexus between a person's conduct and the constitutional violation. Gilmere v. City of Atlanta, 774 F.2d 1495, 1504 (11th Cir. 1986).

The medical records and affidavit of Adair indicate that he did not provide any direct care to the Plaintiff for his injured finger. Rather, he simply noted the Plaintiff's finger injury while examining Plaintiff for other reasons. (Doc. No 21-1, pp. 34-55). In Plaintiff's response to the motion, he states, "P.A. Adair saw Plaintiff during an examination and made notes about the finger." (Doc. No. 28, p. 6). Plaintiff's statement is consistent with Adair's assertions, and does not show the requisite nexus between Frank Adair's conduct and any constitutional violation. Therefore the claims against Frank Adair should be **DISMISSED**.

V.   **Plaintiff Claims against Martha Chipi and Miguel Terradas**

Chipi and Terradas assert that Plaintiff has failed to specifically state how his clearly-established rights have been violated. (Doc. No. 21, p. 11). They state that "[a]t most, [Plaintiff] alleges that various defendants were negligent in their respective diagnosis and treatment of his injured finger." (Id.). Plaintiff claims his denial of medical care constituted a violation of the Eighth Amendment. (Doc. No. 28, p. 5).

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1)

subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. Harris, 941 F.2d at 1505.

Plaintiff states that his injured finger was a serious medical need, and Chipi's and Terradas's refusals to x-ray, thoroughly examine, or splint Plaintiff's finger indicate a deliberate indifference to that serious medical need. Plaintiff asserts that if he had received proper treatment he could have regained use of his finger, and supports this assertion with the medical report of Dr. Kimberly Barrie. (Doc. No. 28-1, pp. 5-6) ("[T]here is most likely damage to the bone based on the prolonged period of deformity."). Viewed in the light most favorable to Plaintiff, there are genuine issues of material facts as to whether Chipi and Terradas exhibited deliberate indifference to Plaintiff's serious medical need. Plaintiff's complaint states a claim upon which relief can be granted against Chipi and Terradas.

## VI. Qualified Immunity

Chipi and Terradas assert that they are entitled to qualified immunity because "Plaintiff fails to cite case precedent which suggests that the course of medical treatment to determine his medical condition amounted to deliberate indifference." (Doc. No. 21, pp. 14-15).

The law governing whether a government official is entitled to qualified immunity is well-established in the Eleventh Circuit. Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long

as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1185 n. 17 (11th Cir.1994). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the movant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001)[2]; Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

In order for Chipi and Terradas to be stripped of qualified immunity as health care providers, Plaintiff must demonstrate that their actions in treating his finger violated a clear and specific standard and that similarly situated reasonable health care providers would have known that their actions violated his constitutional right. Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). "In a medical treatment case, a plaintiff may demonstrate the existence of a clearly established medical standard either through reference to prior court decisions or to the contemporary standards and opinions of the

---

[2] In Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808, 818 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.

medical profession." Id. (citations omitted). Plaintiffs frequently resort to the contemporary standards of the medical profession when the challenged action required the exercise of medical judgment. Id. "In such an instance, a plaintiff may produce opinions of medical experts asserting that the inmate's treatment was so grossly contrary to accepted medical practices as to amount to deliberate indifference." Id. Plaintiff alleges that Movant "Tarutus [sic] was aware of the fact that hand injuries of the type reported by Plaintiff require splinting, diagnostic studies, and careful monitoring in order to avoid severe or permanent injury and disability." (Doc. No. 1, p. 8). Plaintiff offered his medical records from Dr. Kimberly Barrie to support his claim, and she noted in her records that Plaintiff's finger was subject to a "prolonged period of deformity" and that he "was told that there was no treatment available for this problem." (Doc. No. 28, pp. 6-7). The law at the time of Plaintiff's treatment was clearly established that a medical provider could not willfully disregard Plaintiff's injury. Neither Chipi nor Terradas are entitled to dismissal of Plaintiff's claims on the basis of qualified immunity.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Motion be **GRANTED** in part and **DENIED** in part. Plaintiff's FTCA claim should be **DISMISSED** as it was not timely filed. Plaintiff's claims against Frank E. Adair should be **DISMISSED** for failure to state a claim. Plaintiff's Eighth Amendment claims against Dr. Chipi and PA Tarradus should remain pending.

**SO REPORTED** and **RECOMMENDED**, this 1st day of March, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE